**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **MARCIA D. JORDAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 3:26-cv-00963** |
| | ) | |
| **MARKWAYNE MULLINS, Secretary, Department of Homeland Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Pro se plaintiff Marcia D. Jordan filed a civil rights complaint (Doc. No. 1 "Complaint") against the Secretary of the Department of Homeland Security (and other defendants),[1] asserting claims of employment discrimination on the basis of race, sex, age, and disability, culminating in her termination from employment as a TSA officer trainee at the Nashville International Airport. With the Complaint, Plaintiff filed an application for leave to proceed i*n forma pauperis* (IFP) (Doc. No. 2) and a Motion for Appointment of Counsel. (Doc. No. 3).

On September 14, 2026, Defendant filed a Motion to Dismiss (Doc. No. 10) with a supporting Memorandum of Law (Doc. No. 11), to which Plaintiff responded. (Doc. No. 13). On September 22, 2026, Plaintiff filed an exhibit in support of her response to the Motion to Dismiss (Doc. No. 14) and Defendant filed a Reply in support of his Motion to Dismiss. (Doc. No. 15).

[1] The Complaint also names as defendants TSA Homeland Security, the U.S. Attorney General, and the Civil Process Clerk for the local U.S. Attorney's Office. (Doc. No. 1 at 3). However, as Plaintiff later recognized (see Doc. No. 13 at 1; Doc. No. 14 at 1), Secretary Mullins is the only proper defendant to Plaintiff's claims. See Wilson v. U.S. Dep't of Transp., 759 F. Supp. 2d 55, 67 (D.D.C. 2011) ("Title VII and the ADEA do not impose individual liability; the only proper defendant in suits brought under these statutes is the head of the department or agency being sued.") (citations omitted). Thus, Secretary Mullins will be treated as the sole defendant herein, and the remaining defendants will be dismissed from the case.

## I. APPLICATION TO PROCEED IFP

Plaintiff's IFP application contains her report that, following the job loss that is the subject of this action, she expects monthly income totaling $1,250.00 from child support and unemployment payments. (Doc. No. 2 at 1–2). She has minimal assets, and her reasonable monthly expenses exceed her monthly income. The IFP application thus sufficiently demonstrates that she cannot pay the $405 civil filing fee in advance "without undue hardship." Foster v. Cuyahoga Dep't of Health and Human Servs., 21 F. App'x 239, 240 (6th Cir. 2001). Accordingly, the IFP application (Doc. No. 2) is **GRANTED**. 28 U.S.C. § 1915(a).

## II. INITIAL REVIEW

A. Legal Standard

The Court must conduct an initial review and dismiss the Complaint if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); see also Ongori v. Hawkins, No. 16-2781, 2017 WL 6759020, at *1 (6th Cir. Nov. 15, 2017) ("[N]on-prisoners proceeding in forma pauperis are still subject to the screening requirements of § 1915(e)."). To avoid dismissal for failure to state a claim, the Complaint must contain sufficient factual allegations to render a right to relief "plausible on its face," Small v. Brock, 963 F.3d 539, 540 (6th Cir. 2020) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)), such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010).

At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," Nat'l Rifle Ass'n of Am. v. Vullo, 602 U.S. 175, 181 (2024) (quoting Iqbal, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted

factual inferences as true." Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must also afford the pro se pleading a liberal construction, Erickson v. Pardus, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to Plaintiff. Inner City, supra.

B. Facts

According to the Complaint and attachments thereto, Plaintiff was previously employed by the Department of Homeland Security as a Security Service Assistant at Nashville International Airport, training to become a TSA officer. At the beginning of her employment, between December 12 and 17, 2022, Plaintiff had an hour's pay deducted for each day that she could not report to work on time due to finishing her final workdays at her previous job, whereas scheduling accommodations were made for other TSA officer trainees who were younger and/or non-Black. (Doc. No. 1 at 7).

In January 2023, Plaintiff was denied an opportunity to train on how to do pat-downs, even though TSA officers are required to conduct pat-downs. (Id.) Instead, the trainer only allowed Plaintiff to be the subject of pat-downs conducted by the other trainees. (Id.) In February–March 2023, Plaintiff was denied the opportunity to attend the Federal Law Enforcement Training Center (FLETC) and, despite holding a master's degree, was not promoted to TSA officer. (Id.) While "[m]anagement made it hard for [Plaintiff] to get trained," "[t]hey let a younger male trainee skip training because he had a degree so he could go straight to FLETC[,] the training academy." (Id.)

On April 18, 2023, Plaintiff was denied permission to join her fellow trainees when they left work at 10:00 a.m. to go to the Sheraton in order to take the promotional exam, even though she had passed the (presumably preliminary) "online assessment." (Id. at 8). Plaintiff "was the only one [who] was assigned to leave [but] was not allowed to leave with the other[s] at 10 a.m."

(Id.) Plaintiff was subsequently informed that she, in fact, had not passed the online assessment, even though she had received a notice stating that she passed. (Id.)

On April 29, 2023, Plaintiff was "shoved and pushed" on board the employee bus by a white supervisor, Angela Cook, despite Plaintiff receiving disability accommodations. (Id.) Cook pushed Plaintiff "so hard that she had to go to the BNA medical techs." (Id.) Cook, a white woman, was allowed to keep her job despite TSA's zero-tolerance policy for such uses of physical force. (Id.)

From May - July 2023, a management official named Deborah Lee hugged Plaintiff at least four times per day and followed her "out on the floor," calling her "Bubbles" and making her feel uncomfortable. (Id.) Although Lee told Plaintiff that Plaintiff was assigned to her work unit, the written schedule did not show that Plaintiff was ever in Lee's unit. (Id.)

On July 5, 2023, Program Manager Natalie Reynold discouraged Plaintiff from filing a disability claim, saying that it "would open up a Pandora['s] Box." (Id. at 9). On July 23, after Plaintiff had refused Officer Lee's hugs and opposed her use of the nickname "Bubbles," Officer Lee falsely accused Plaintiff of being late for her shift, to prevent Plaintiff from being promoted to the TSA officer position. (Id.) One day later, on July 24, 2023, Plaintiff's employment was terminated. (Id. at 10). Plaintiff describes her termination as follows:

> On July 24, 2023[,] management wrongfully terminated Ms. Jordan['s] employment during her probationary period. Ms. Jordan was granted Federal Whistleblower rights which were not honored by the TSA Homeland Security Management team. Ms. Jordan was granted ADA Accommodations but was never offered or placed in a lateral, lower, vacant job that she could perform well. Homeland Security was already paying Ms. Jordan 10,000 less than the TSA [Security Service Assistant] across the board pay. They could have placed her anywhere because they were paying her lower pay. This lower vacant position ADA Accommodation was never offered or given to complain[ant]. Ms. Jordan contacted the Office of Special Counsel and received Whistleblower rights that were never honored by Homeland Security. Ms. Jordan was fired without considering or

> honoring her civil ADA rights or whistleblower rights. EEOC gave me the right to file in court within 90 days.

(Id.) Plaintiff's EEOC paperwork is attached to the Complaint. (Doc. No. 1-10 at 4–11). Included in that paperwork is a copy of the EEOC's June 22, 2026, decision denying Plaintiff's request for reconsideration of "the Commission's prior appellate finding that [Plaintiff] failed to evidence that the Agency's allegedly adverse decisions at issue were predicated upon her race, age, sex, color, disabilities, or retaliation." (Id. at 9). That decision also contained the EEOC's notice of Plaintiff's right to sue in district court within 90 days (id.), which she promptly exercised by filing the Complaint on July 13, 2026. Among other relief, Plaintiff seeks reinstatement to her position with TSA. (Doc. No. 1 at 12).

C. Analysis

The Complaint claims violations of Plaintiff's rights under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act (ADEA), including pay disparity, harassment by a supervisor, failure to promote, and wrongful discharge. (Doc. No. 1 at 7–10). "[T]o state an employment discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, a complaint 'must allege sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference that the defendant discriminated against the plaintiff regarding her employment, because of [her] race, color, religion, sex, or national origin.'" Washington v. First Nat'l Bank of Pennsylvania, 179 F.4th 1008, 1014 (6th Cir. 2026) (quoting Keys v. Humana, Inc., 684 F.3d 605, 610 (6th Cir. 2012)) (internal quotation marks omitted). As another district court has stated, both Title VII and related federal anti-discrimination statutes require two basic elements to be plausibly alleged: "(i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, sex, age, or disability." Diggs v. Potter, 700 F. Supp. 2d 20, 39 (D.D.C. 2010). And "[t]o prove retaliation

under these statutes, the plaintiff generally must establish that [s]he suffered (i) a materially adverse action (ii) because … she had brought or threatened to bring a discrimination claim." Id. at 40.

These allegations include: being paid less than her less educated peers, being denied trainings and opportunities for advancement that other trainees received, and being terminated on a pretext of tardiness after she rebuffed a supervisor's unwelcome physical touches and use of a derogatory nickname. This Court finds that these allegations are sufficient to support a reasonable inference that she was discriminated against and ultimately terminated for reasons that included her race, age and/or retaliation.

The above determination is all that is necessary to advance this matter beyond initial review. The pending Motion to Dismiss, Plaintiff's response thereto, and Defendant's Reply address these and other claims or potential claims of the Complaint, as well as issues of timeliness and exhaustion of administrative remedies.

## III. CONCLUSION

As explained above, Plaintiff's claims under Title VII and the ADEA are sufficiently pled to survive initial review. However, the Court's determination that the Complaint states colorable claims for purposes of this initial screening does not preclude the Court from dismissing any claim at any time for the reasons set forth in 28 U.S.C. § 1915(e)(2).

As Secretary Markwayne Mullins is the only appropriate Defendant here, see Wilson v. U.S. Dep't of Transp., 759 F. Supp. 2d 55, 67 (D.D.C. 2011), all other Defendants are **DISMISSED** from this action.

With the case still in the pleading stage and a dispositive motion pending, Plaintiff's Motion for Appointment of Counsel (Doc. No. 3) is **DENIED** without prejudice to renewal, if warranted, at a subsequent stage of the proceedings.

The Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons (AO 440) and USM 285 form) for Secretary Mullins. Plaintiff **MUST** complete the service packet and return it to the Clerk's Office within **30 DAYS** of the entry of this Order. Failure to do so may result in the dismissal of this case. Upon return of the properly completed service packet, the Clerk is **DIRECTED** to issue summons to the U.S. Marshals Service for service on the Defendant. Fed. R. Civ. P. 4(b) and (c)(3).

This action is **REFERRED** to the Magistrate Judge to oversee service of process, to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

Plaintiff is cautioned that she must keep the Court informed of her current address at all times, or risk dismissal of this action for failure to prosecute. See Fed. R. Civ. P. 41(b); M.D. Tenn. L.R. 41.01(b). Additional resources for pro se litigants, including forms, handbooks, and information sheets, are available on the court's website. See https://www.tnmd.uscourts.gov/representing-yourself-federal-court.

IT IS SO ORDERED.

Waverly D. Crenshaw, Jr.

WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE